**RECONSTRUCTION FINANCE COR-PORATION, Plaintiff,**

v.

**TUOLUMNE GOLD DREDGING CORPO-RATION, a corporation, et al., Defendants.**

**No. 6192.**

United States District Court
N. D. California, Northern Division.

June 5, 1953.

Brobeck, Phleger & Harrison, St. Clair, Connolly & Cerini, San Francisco, Cal., for plaintiff.

DeLancey C. Smith, San Francisco, Cal., for defendant.

LEMMON, District Judge.

Courts administer justice, not alms. As has so often happened in recent years both in international and intranational affairs, the United States is here being asked to pay for the misadventure or the improvidence of others.

Fortunately, however, we have a Supreme Court that is steadily moving away from this eleemosynary philosophy of government. In Federal Crop Insurance Corporation v. Merrill, 1947, 332 U.S. 380, 383–384, 68 S.Ct. 1, 3, 92 L.Ed. 10, the Court said:

"It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. (Cases cited.)"

It is in this legal climate, then, that the instant controversy must be resolved.

**1. *The Agreed Statement of Facts***

This is a civil action brought by the plaintiff to foreclose an indenture and chattel mortgage, for a money judgment, for an accounting, for a sale, and for an injunction. The defendant Walter W. Johnson Company, hereinafter referred to as Johnson, has filed a counterclaim, consisting of five "causes of counterclaim". According to the counterclaim itself, as filed on June 30, 1950, it is directed solely against the plaintiff. The Agreed Statement of Facts, however, recites that Johnson's counterclaim is "against plaintiff and against defendant Tuolumne Gold Dredging Corporation", hereinafter referred to as Tuolumne. Johnson's counterclaim asks for a money judgment and for a lien superior and senior to any lien that may exist in favor of the plaintiff on Tuolumne's property. The present opinion deals with Johnson's counterclaims alone, as directed against the plaintiff.

The plaintiff is a Federal corporation. All of its capital stock and assets are wholly owned by the United States.

Johnson is a Nevada corporation, duly qualified to transact business in California.

Tuolumne is a Delaware corporation, having a business office in Minneapolis, Minnesota, and having its principal California office and place of business in Stanislaus County.

On May 11, 1937, for the purpose of securing certain promissory notes, infra, Tuolumne executed and delivered to The Anglo California National Bank of San Francisco, hereinafter referred to as Anglo, as trustee, and to the plaintiff, as beneficiary, an indenture and chattel mortgage, whereby Tuolumne conveyed and mortgaged to Anglo as trustee all the property therein described. An original counterpart of that document was recorded on June 2, 1937, in Stanislaus County, as an instrument affecting real estate, and was also indexed as a chattel mortgage in the same County. On the same date, the indenture and mortgage was also recorded as a chattel mortgage in the City and County of San Francisco. Certificates of re-recordation were filed in Stanislaus County on May 7, 1941, May 5, 1945, and April 30, 1949, and in San Francisco on May 7, 1941, May 3, 1945, and April 28, 1949.

Pursuant to the provisions of the indenture and chattel mortgage, Tuolumne executed and delivered to the plaintiff sixty promissory notes, payable to the plaintiff's order in the principal sum of $10,000 each, with interest at 6 per cent. The notes bore varying dates of execution, and matured on divers dates. The execution dates ranged from June 11, 1937, to September 24, 1938, inclusive, and the maturity dates from January 1, 1939, to January 1, 1945, inclusive.

The notes were delivered to the plaintiff by Tuolumne on the dates of their execution in consideration of the plaintiff's advance to Tuolumne of $10,000 for each thereof, making a total of $600,000. Prior to delivery, each note was certified by Anglo as trustee. All of the notes

were, and those not previously paid in full are, secured by the indenture and chattel mortgage.

On April 14, 1944, the plaintiff and Tuolumne entered into an agreement by the terms of which the time for payment of the then-existing principal balance of $550,000—five of the notes having been paid in full—and of the interest then due and unpaid to January 1, 1944, amounting to $170,167.20, was extended to January 1, 1945, with interest on such principal indebtedness from January 1, 1944, to the date of payment, at 4 per cent.

Although each note provided for interest at 6 per cent, interest was charged at 6 per cent only from July 1, 1938, to January 1, 1943. Thereafter interest has been charged on the principal balance remaining unpaid at the rate of 4 per cent. No interest has been charged on interest in default.

No part of the principal or of the interest has been paid, except that the first nineteen notes have been paid in full, together with the interest thereon, and except that the interest on the remaining notes has been paid to July 1, 1938. There is now due from Tuolumne on the notes numbered from 20 to 60, inclusive, the principal sum of $410,000, with interest at 6 per cent from July 1, 1938, to January 1, 1943, amounting to $110,309.59, and interest from January 1, 1943, to June 1, 1949, at 4 per cent, amounting to $105,274.52, making a total of interest to June 1, 1949, of $215,584.-11; and interest from June 1, 1949, upon the principal amount, at 4 per cent.

Under the terms of the chattel mortgage, Tuolumne agreed to pay, with interest at 6 per cent, all collection expenses that the holder of the notes might incur, including attorneys' fees.

The plaintiff also advanced to Tuolumne, under the same indenture and chattel mortgage, the additional sum of $30,000, of which $15,000 was lent on April 7, 1947, and $15,000 on May 13, 1947. The $30,000 was in addition to all loans and advances made to Tuolumne on account of the above-mentioned notes. Interest on the two advances just re-

ferred to has accrued from the dates thereof, at 4 per cent. No part of these two later loans has been paid, and there is now due thereon the principal sum, $30,000, together with interest at 4 per cent to June 1, 1949, amounting to $2,513.42, and interest from June 1, 1949, at 4 per cent.

On or about November 27, 1939, Tuolumne executed and delivered to Anglo, as trustee, and the plaintiff, as beneficiary, an indenture and chattel mortgage, which has been duly recorded in Stanislaus County and in San Francisco City and County. Under this 1939 mortgage, Tuolumne executed and delivered to the plaintiff certain promissory notes in the total principal amount of $120,000. Thereafter Tuolumne paid to the plaintiff the principal and interest due under that 1939 indenture and chattel mortgage, the payments being made from Tuolumne's operation of the dredge hereinafter mentioned.

From the early part of January, 1940, Johnson knew of the execution of the second indenture and chattel mortgage.

Prior to May 11, 1937, with the knowledge and approval of the plaintiff, Johnson and Tuolumne negotiated for an agreement between them for the construction of a gold dredging machine to be built for and used by Tuolumne upon the real property referred to in the first indenture and chattel mortgage, supra. On or about the said date, Tuolumne and Johnson executed a written contract for the construction of the dredge. Either originals or executed copies of the contract and the bond referred to therein were delivered to the plaintiff on or about May 11, 1937. The contract provided that the parties thereto would be bound by the terms of the indenture and chattel mortgage from Tuolumne to the plaintiff.

The chattel mortgage just referred to provided for certain uses of the money advanced thereunder, including the establishment of a fund in the custody of Anglo, known as the "construction fund". This fund was subject to withdrawals by Tuolumne with the approval of certain representatives of the plaintiff, or by Anglo upon certification of a representative of the plaintiff.

Withdrawals could be made from the construction fund in accordance with the provisions of the first indenture and chattel mortgage, particularly Article II thereof, which reads in part as follows:

"All sums disbursed by R. F. C. against the Notes, and the $50,000 advanced by the Trustor (Tuolumne), shall be deposited with and held by Trustee as a special demand trust deposit called the "Construction Fund", constituting a part of the Trust Estate hereunder. Trustee is authorized and instructed to honor checks or drafts drawn upon the Construction Fund (a) by Trustor in amounts and payable to parties specified in requisitions of, or other instruments presented by, Trustor bearing or accompanied by the written approval of the Chief Engineer or Acting Chief Engineer of the Self-Liquidating Division of R. F. C. (herein called the 'Chief Engineer'), or the Supervising Engineer hereinafter provided for; or (b) by the Trustee in amounts payable to parties specified in written instructions of the Chief Engineer in the event Trustor neglects or refuses to present such checks or drafts and/or requisitions and the Chief Engineer certifies to Trustee that in his opinion it is necessary or desirable to make payment of specified expenses or obligations incurred in connection with the Project.

"Any part of said Construction Fund remaining unexpended after the completion to the satisfaction of the Chief Engineer of the construction work for which the loan by R. F. C. was authorized shall be transferred by the Trustee to the Sinking Fund * * *."

From the above, it will be seen that the Construction Fund totaled $650,000. Such fund was created and maintained in Anglo, with said bank as the Trustee.

Pursuant to the indenture and chattel mortgage certain funds were placed into the construction fund and were disbursed therefrom to Tuolumne with the approval of the plaintiff and were paid by Tuolumne to Johnson pursuant to the construction contract.

On or about May 26, 1938, there was $100,000 yet to be advanced into the construction fund. On that date, there was disbursed to Tuolumne the sum of $30,000. On or about June 15, 1938, another payment of $30,000 was made to Tuolumne. Both disbursements were made pursuant to the indenture and chattel mortgage of May 11, 1937, and were deposited in the construction fund pursuant thereto. On September 24, 1938, there was disbursed to Tuolumne the further sum of $40,000—the final payment of the proceeds of the loan from the plaintiff to Tuolumne. This final sum was likewise paid out in accordance with the chattel mortgage and was deposited into the construction fund.

In connection with this indenture of May 11, 1937, it should be stated that, in an "Agreement" executed by Tuolumne and Johnson on the same day, it was provided that Tuolumne and Johnson were to be bound by the indenture between Tuolumne and the plaintiff insofar as it related "to any part or in any way to the work undertaken or the payments specified herein". The Agreement between Tuolumne and Johnson provided for the performance of "the services and work * * * in the purchase, erection and completion" of a gold dredging machine by the latter for the former.

2. *A Statement of the Case*

Mention should be made of two other cases relating to the construction of this same gold dredging machine: Western Pipe & Steel Co. v. Tuolumne Gold Dredging Corporation, 1944, 63 Cal.App. 2d 21, 146 P.2d 61, and Tuolumne Gold Dredging Corporation v. Walter W. Johnson Co., D.C.1947, 71 F.Supp. 111, the latter decided by this Court. Both Tuolumne and Johnson were parties to this earlier litigation, but the present plaintiff was not.

In the Court's view of the issues, and in the light of the Agreed Statement of Facts and the factual recitals contained in the above mentioned reported decisions, only a brief summary of the present pleadings is here required.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., the plaintiff has filed a motion for summary judgment dismissing all the counterclaims contained in the Answer and Counterclaim presented by Johnson. Under Rule 12(h), the plaintiff has filed an alternative motion for judgment on the pleadings, asking for the dismissal of Johnson's second, third, fourth, and fifth counterclaims on the ground that each fails to state a claim upon which relief may be granted. A second alternative motion filed by the plaintiff seeks further answers to certain interrogatories.

The plaintiff's motion for summary judgment, which is the only one that need be considered, requires an examination of Johnson's following five "causes of counterclaim" filed in its "answer and counterclaim":

1. " * * * plaintiff herein is indebted to Johnson in the * * * sum of $109,216.89 under its liability to pay Johnson *as a third party beneficiary* under the mortgage or loan agreement between plaintiff and Tuolumne, no part of which sum has been paid."

2. *"Johnson is entitled to a lien superior and senior to any lien alleged to exist on behalf of plaintiff* against the property of Tuolumne for the sums hereinbefore alleged to be due, no part of which has been paid."

3. " * * * plaintiff herein is indebted to Johnson in the sums hereinbefore mentioned because plaintiff has been *unjustly enriched* by said sums and is therefore obligated to pay same to Johnson, in that said dredge operated for a period of approximately eleven years, during which time plaintiff seized the proceeds of such operation," etc.

4. "At the time such second mortgage was placed on the property, plaintiff had full knowledge of the claims and prior rights of Johnson, but in *fraud* of such rights appropriated to itself all of the proceeds of the operation of the dredge," etc.

5. "Under the terms of the contract between Johnson and Tuolumne it was provided that any *sales tax assessed and collected by the State of California* would be reimbursed to Johnson as part of the cost of the dredge, and upon many occasions within the past four years plaintiff has admitted the amount of such tax as above alleged was due and payable to Johnson under the contract," etc. (Emphasis supplied).

3. *The California Statute of Limitations Does Not Apply In This Case.*

▮ At the outset, it should be noted that, in its amended answer to Johnson's counterclaims, the plaintiff has pleaded, as its "Second Defense", that those counterclaims "arose in 1938 and no action was brought thereon by said defendant against plaintiff until the filing of said counterclaims in 1950, and said claims, and each of them, are barred by the provisions of the Code of Civil Procedure of the State of California relating to the limitation of actions". The plaintiff has likewise pleaded the defense of laches in a similar manner.

In its brief, Johnson complains that as to each of these two defenses, the plaintiff's pleading has been "improper" and "inadequate", as tested by the requirements of Section 458 of the California Code of Civil Procedure.

The difficulty with the defendant Johnson's objection lies in the fact that the sufficiency of the plaintiff's pleading of the statute of limitations and of laches is to be determined not according to the California Code but according to the Federal Rules of Civil Procedure.

Both the plaintiff and Johnson have assumed that the California statute of limitations governs this case. In the Court's view, the proper statute of limitations is 28 U.S.C.A. § 2401(a), which reads as follows:

"Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."

In Werner v. United States, D.C.Cal. 1950, 10 F.R.D. 245, 247–248, it was held that the validity of a lease and an option to renew were governed by *California* law, but the Court relied upon *Federal* law in resolving the question of limitations:

"This action was not commenced until November 8, 1949—more than six years thereafter. Plaintiff's claim is therefore barred by the provisions of 28 U.S.C.A. § 2401(a) [supra].

"This court will dismiss an action against the United States for want of jurisdiction whenever the record discloses the claim is barred, *even though the bar of the statute has not been pleaded on behalf of the Government.* (Many cases cited.)" (Emphasis supplied.)

The above case was reviewed by our Court of Appeals in Werner v. United States, 9 Cir., 1951, 188 F.2d 266, 268. In its opinion, the Court thus expounded Section 2401(a), supra:

"Section 2401(a) appeared for the first time in the 1948 edition of the Judicial Code. Title 28 is more than a mere codification. It is also a revision. Ex parte Collett, 337 U.S. 55, 56–72, 69 S.Ct. 944, 959, 93 L. Ed. 1207. See also note 5 cited to the text in Paramount Pictures v. Rodney, 3 Cir., 186 F.2d 111. The

statute was intended to apply to 'Every civil action' brought in a United States district court; that is to say, to every action brought in a United States district court, save a criminal or an admiralty proceeding. Section 2401(a) not only served to consolidate the provisions of Section 41(20), the Tucker Act and Section 942 of Title 28 U.S.C., 1940 Ed., *it also created a general statute of limitations insofar as suits against the United States are concerned.* The provisions of Section 2401(a) apply to a suit for reformation, originally an action in equity, precisely *as they would to a suit for damages, an action at law.*" (Emphasis supplied.)

In Werner v. United States, 9 Cir., 198 F.2d 882, 883, decided nine months ago, our Court of Appeals declared that its earlier holding was "final".

In Gans S. S. Line v. United States, 2 Cir., 1939, 105 F.2d 955, 957, certiorari denied, 1939, 308 U.S. 613, 60 S.Ct. 179, 84 L.Ed. 512, the Court held that "in suits against the United States the question of limitations can be successfully urged as a defense whenever it appears from the record that the suit is barred."

Nor is it material that the plaintiff here carries a corporate designation rather than the formal appellation of "the United States". We must bear in mind the Supreme Court's admonition, already quoted in full, to the effect that "Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it". Federal Crop Insurance Corporation v. Merrill, supra, 332 U.S. at pages 383–384, 68 S.Ct. at page 3.

In two recent decisions, the foregoing principle has been followed in cases involving the question of the applicability of state statutes of limitations to the present plaintiff or one of its subsidiaries.

In Reconstruction Finance Corporation v. Marcum, D.C.Mo.1951, 100 F. Supp. 953, the court squarely held that "state statutes of limitation putting a time limit upon enforcement of obligations due private persons are not binding on the Reconstruction Finance Corporation".

And in United States v. New York Dock Co., D.C.N.Y.1951, 100 F.Supp. 303, 305, 309, for the purpose of deciding whether the New York state statute of limitations was a defense to the first and second causes of action, the claims were considered as those of the United States Commercial Company, "a wholly owned corporate subsidiary of the Reconstruction Finance Corporation." There the Court held that "a liberal construction of the charter grant of a right to sue and be sued, would not require a court to deny the governmental corporation immunity from a state statute of limitation".[1]

4. *The Conflicting Views As To When The Statute of Limitations Commenced To Run*

So far as the sufficiency of pleading is concerned, it need merely be observed that Rule 8(c) of the Federal Rules of Civil Procedure requires only that "affirmative defenses", including the statute of limitations and laches, shall be "set forth affirmatively". No further exaction is laid down. There is no substance to Johnson's technical objection in this regard. The mere fact that the plaintiff, like Johnson, was mistaken as to which statute of limitations was applicable, does not destroy the former's right to invoke that defense. Indeed, under the holdings in the Werner and Gans cases, supra, whenever the record dis-

1. Cf. Clallam County, Wash., v. United States and United States Spruce Production Corporation, 1923, 263 U.S. 341, 345, 44 S.Ct. 121, 68 L.Ed. 328; E. I. Dupont de Nemours & Company v. Davis, 1924, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788; Graves v. New York ex rel. O'Keefe, 1939, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927; Inland Waterways Corporation v. Young, 1940, 309 U.S. 517, 523–524, 60 S.Ct. 646, 84 L. Ed. 901.

closes that a claim is barred, the United States can rely upon the applicable statute of limitations without pleading it at all. In the instant case, the plaintiff has pleaded a statute of limitations, but has invoked the wrong one.

Accordingly, the timeliness of Johnson's five "causes of counterclaim" will now be tested in the light of Section 2401(a), supra.

Johnson asserts, and the courts of California have so held, that "the dredge was completed in June, 1938, and delivered into the exclusive possession of Tuolumne on June 25, 1938". See Western Pipe & Steel Co. v. Tuolumne, etc., Corp., supra, 63 Cal.App.2d at page 30, 146 P.2d at page 66. The stipulation shows that the final disbursement of the proceeds of the loan from the plaintiff to Tuolumne—by way of the "construction fund"—was made on September 24, 1938. The plaintiff contends that this latter date was the one on which Johnson could have brought suit, instead of waiting until June 30, 1950, or nearly twelve years later.

On the other hand, Johnson maintains that "Under no conditions could the statute of limitations have begun to run until the decision of this Court became final in April, 1949". Johnson is here alluding to the fact that, though notice of appeal in the case of Tuolumne against Johnson in this Court, supra, was filed on June 16, 1947, Tuolumne's appeal was abandoned, and on April 21, 1949, a mandate from our Court of Appeals dismissing the case was filed.

Johnson argues that "At no time prior to April, 1949, when the judgment of this Court became final could Johnson maintain an action against RFC because there was still pending against it by Tuolumne the case decided by this Court and the Johnson claim was unliquidated until such decision. In other words, up to that time any suit against RFC by Johnson could have been abated because the State court judgment was not yet final and it was possible that Tuolumne would recover against Johnson a sum which would wipe out any judgment in favor of Johnson."

In connection with Johnson's statement that "the State court judgment was not yet final", it might be well to remark that in the earlier case brought here, this Court declared that the ruling of the California District Court of Appeal that the judgment of the Superior Court of Stanislaus County "was interlocutory pending the determination in the Federal Court, was merely to hold in abeyance the entry of a final judgment until after decision in the case pending here". Tuolumne Gold Dredging Corp. v. Johnson Co., supra, 71 F.Supp. at page 113.

These conflicting views of the plaintiff and of Johnson as to when the statute of limitations commenced to run will be evaluated, so far as is necessary, in the course of the discussion of Johnson's five "causes of counterclaim", which will be next taken up seriatim.

5. *A Third-Party Beneficiary Is Not Exempt From The Operation Of Statutes of Limitations.*

■ For the sake of argument, let us assume, without deciding, that Johnson is, as it contends in its first "cause of counterclaim", a third-party beneficiary. Such a status would not exempt Johnson from the bar of an applicable statute of limitations.

In Bogart v. George K. Porter Co., 1924, 193 Cal. 197, 200–201, 223 P. 959, 960, 31 A.L.R. 1045, such a theory of exemption was rejected in the following language:

"Respondent contends that her cause of action rests upon the agreement of the George K. Porter Company in 1906, whereby it assumed that agreed to pay all of the outstanding indebtedness of the said George K. Porter; that under the well-recognized rule of equity, which has been enacted as a rule of law in section 1559 of the Civil Code, providing that 'a contract made expressly for the benefit of a third person may be enforced by him at

any time before the parties thereto rescind it,' her right of action is exempted from the operation of any of the statutes of limitation. Her position is that the phrase 'at any time before the parties thereto rescind it' expresses the only limitation upon her right to maintain her action, and that all statutes of limitation are excluded thereby. We cannot accept this view. The rule of law there expressed is a rule of substantive law, and is not adjective or procedural. It means that the *cause of action* arises in favor of the third person upon the making of such a contract, and that such a cause of action subsists until the parties thereto rescind their contract. It does not mean that the *right to commence and* maintain an action upon such *cause of action* is exempted from the statutes of limitation."

Accordingly, this Court holds that, even if it be assumed that Johnson is a third-party beneficiary under the mortgage or loan agreement between the plaintiff and Tuolumne, the six-year statute of limitations embodied in Section 2401(a), supra, is applicable to Johnson's claim.

 It is further held, under the same assumption, that the statute began to run when the construction fund became wholly exhausted; that is to say, on September 24, 1938.

Johnson's own pleadings show that the above was the date on which, according to its "third-party beneficiary" theory, its right of action accrued. In its first ."cause of counterclaim", Johnson alleges:

"On September 24, 1938, plaintiff delivered to Tuolumne, from the construction fund, the sum of $40,000.-00 which was the entire balance of the proceeds of the loan made by plaintiff under the mortgage dated May 11, 1937 * * * The money withdrawn from the construction fund as aforesaid by Tuolumne with the approval of the plaintiff, beginning May 26, 1938, in the total amount of $100,000.00 was in large part diverted to other purposes and uses so that said fund contained only $40,000.00 as aforesaid on September 24, 1938, at a time when there was due Johnson under the contract the said sum of $51,203.99," etc.

\* \* \* \* \*

"Contrary to the express provisions of the resolution of September 1936 passed by plaintiff and the provisions of the mortgage and the agreement between plaintiff, Johnson and Tuolumne for the construction of the dredge, plaintiff permitted and caused the funds or money remaining in the construction fund from and after May 25, 1938, to be diverted therefrom from other purposes without making provision or providing for payment to Johnson of the money remaining due it or to become due to it under the construction contract," etc.

In the Bogart case, supra, 193 Cal. at page 202, 223 P. at page 961, the Supreme Court of California said:

"Under the rule of the cases which hold that the right of action 'finds its source in the agreement of the immediate parties thereto,' it is apparent that the obligation from the promisor (grantee) to the third person (creditor) arises at once upon the making of the agreement. The law instantly 'creates the duty, establishes a privity, and implies the promise and obligation on which the action is founded.' The cause of action therefore arises at once, *and the right of action thereon accrues when the obligation is breached.*" (Emphasis supplied.)

Accordingly, the Court holds that under the jurisprudence of California, whatever right Johnson may have had to bring suit as a third-party beneficiary accrued on September 24, 1938, and that Johnson is therefore barred from recovering from the plaintiff, by virtue of 28 U.S.C.A. § 2401(a).

**6.** *Under California Law, Johnson's Lien, If Any, Is Barred Together With The Principal Obligation.*

While Johnson concedes that the plaintiff "under its contracts, and in this particular case, required Johnson to give up its vendor's lien", it is nevertheless insisted that:

"A fair inference from the construction contract and the indenture, and the circumstances surrounding their execution, is that Johnson bartered the protection afforded by a vendor's lien for the protection afforded by RFC's promise to pay the full purchase price through the construction fund, and that RFC wrongfully deprived Johnson of that protection by depleting the construction fund and diverting therefrom to other purposes moneys to which Johnson was entitled. Therefore, Johnson's vendor's lien still persists and is paramount to the lien asserted by RFC.," etc.

In this connection, it should be noted that, in the indenture and chattel mortgage of May 11, 1937, under which it is stipulated that the plaintiff is the beneficiary it is provided that Tuolumne warranted its title to be "free and clear of all liens, charges and encumbrances".

Be that as it may, the controlling rule on this point is found in Section 2909 of the Civil Code of California:

"A lien is to be deemed accessory to the act for the performance of which it is a security, whether any person is bound for such performance or not, and is extinguishable in like manner with any other accessory obligation."

While it has already been pointed out that the statute of limitations to be applied here is Federal and not State, it is illuminating to inquire just how "accessory" a lien really is in California. Section 2911 of the Civil Code provides in part:

"A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, * * *

"1. An action can be brought upon the principal obligation, * * *."

Although this Court is applying the Federal *period* of limitation, it cannot close its eyes to the fact that in this State a lien is "extinguished" by the same statute of limitations that applies to "the principal obligation".

This rule is unique. "It has been said that no other state has any provision in its law similar to section 2911 of the Civil Code." 16 Cal.Jur., "Liens", Section 28, Page 327.

To recapitulate, then, Johnson's novel claim of a "vendor's lien" is to be rejected for the following reasons:

1. In the chattel mortgage, Tuolumne warranted that it was the owner of the property involved, "free and clear of all liens"; and in the Agreement between Tuolumne and Johnson, the parties declared themselves bound by the chattel mortgage, insofar as it relates to the work undertaken or the payments.

2. In California, a lien is "extinguished" with the obligation to which it is "accessory", even as to the statute of limitations.

Accordingly, the Court holds that Johnson has failed to relieve itself of the effect of its admitted surrender of the vendor's lien; and that, even if Johnson ever had such a lien, it has been extinguished by the applicable Federal statute of limitations, 28 U.S.C.A. § 2401(a).

**7.** *The Record Contains No Suggestion of Unjust Enrichment Attributable To The Plaintiff.*

As has been shown, the third "Cause of Counterclaim" is based upon a theory of "unjust enrichment", in that the plaintiff "seized the proceeds" from the operation of the dredge "during" "a period of approximately eleven years". It is further averred that this "appropriation" of the proceeds was effected by the plaintiff "without making payment to Johnson for the dredge, which was

the means by which it obtained the gold content of the property of Tuolumne which was so appropriated," etc.

After a careful study of the entire record, the Court is inclined to the belief that any alleged "unjust enrichment" enjoyed by the plaintiff could not have commenced before July 2, 1940, and could not have continued after September 4, 1942. Those dates are significant for the following reason: As previously stated, the plaintiff made a second loan to Tuolumne on November 27, 1939, amounting to $120,000. Payments by Tuolumne in satisfaction of notes covering this second loan commenced on July 2, 1940, and were completed on September 4, 1942.

It is conceded that the plaintiff "did receive amounts from Tuolumne from its income in operating the dredge". Johnson complains that:

" * * * RFC would have had no security beyond a small portion thereof for its loan except for the fact that Johnson built a dredge with which RFC expected to get repaid for its loan to Tuolumne from the proceeds of the operation of such dredge. Under these circumstances when RFC appropriated the proceeds of the operation of the dredge to repay itself large sums, *including the entire second mortgage,* without making payment of anything to Johnson on account of the balance due for the construction of the dredge, it subjected itself to the well known doctrine of unjust enrichment," etc. (Emphasis supplied.)

Since the record shows that this second mortgage was paid off in its entirety on September 4, 1942, the Court was inclined to the belief that any recovery by Johnson on the ground of unjust enrichment was barred by the statute of limitations to which reference has already been made. In view, however, of Johnson's allegations that the plaintiff's "seizure" of the proceeds from the operation of the dredge occurred "during" the eleven-year operation of the dredge —i. e., until at least the year 1949—the Court desired some clarification from Johnson's counsel as to his grounds for averring that the plaintiff's alleged "unjust enrichment" happened "during" eleven years.

Accordingly, on May 22, 1953, the Court addressed a letter to counsel for Johnson and the plaintiff, inquiring whether they could clarify, by stipulation or otherwise, the Court's "doubt as to whether Johnson intends to rely upon any claim of unjust enrichment or of fraud other than that alleged to have arisen out of the application of the proceeds from the operation of the dredge to the satisfaction of the second mortgage".

Counsel for the plaintiff replied promptly, under date of May 26, 1953, giving their views on this phase of the case.

On May 29, 1953, counsel for Johnson telephoned to this Court from New York, reporting that he had received the Court's letter while packing for a business trip to the East. Counsel further stated that he would have to devote all his time to an important hearing to be held the following week before the Interstate Commerce Commission in Washington; that the hearing in Washington would require his undivided attention until his return to San Francisco, on or about June 22, 1953; that no one in his office was sufficiently familiar with the facts of the instant case to be able to answer the Court's letter of May 22, 1953; and that consequently a reply to that letter could not be dispatched before the. latter part of June, 1953.

The Court believes that with a little outlay of effort, counsel for Johnson could have prepared an adequate reply to the Court's simple inquiries of May 22, 1953. The Court deplores the fact that counsel for Johnson has not seen fit to exert himself to supply promptly the requested information. Frankness and punctuality are obligations due the Court from its officers.

In any event, and in view of the unclear state of the record on the limitations aspect of Johnson's third "Cause

of Counterclaim", the Court will consider the latter on its merits.

It is difficult to understand under what theory Johnson can assert that the plaintiff has been "unjustly enriched" in this case. Johnson's own pleadings set forth that "The mortgage provided that the money to be advanced by plaintiff thereunder would be devoted to the construction of the dredge under the contract between Johnson and Tuolumne, and for this purpose a construction fund was provided to be created and maintained".

It is stipulated, and the first indenture and chattel mortgage so recites, that the construction fund was subject to withdrawals *by Tuolumne* with the approval of certain representatives of the plaintiff, etc., as already set forth. Finally, the stipulation discloses that the $100,000 "yet to be advanced into" this construction fund on or about May 26, 1938, was *in fact* disbursed *to Tuolumne* between that date and September 24, 1938, in three installments of $30,000, $30,000, and $40,000, respectively.

According to the indenture and chattel mortgage, "All sums disbursed by R.F.C. against the Notes, and the $50,-000 advanced by Trustor (Tuolumne)" were to "be deposited with and held by Trustee (Anglo) as a special demand trust deposit called the 'Construction Fund', constituting a part of the Trust Estate hereunder".

It is not claimed, nor can it be so claimed, and this construction fund was redelivered to the plaintiff. On the contrary, it is stipulated that the three final installments, supra, were "disbursed pursuant to the terms and conditions of the indenture and chattel mortgage and, as prescribed therein (were) deposited in the construction fund".

Johnson does complain, however, that the plaintiff unjustly enriched itself by appropriating "the proceeds of the operation of the dredge to repay itself large sums". Yet such "appropriation" was in strict accordance with the terms of the indenture and chattel mortgage, by which, under its agreement with Tuo-lumne, Johnson itself was bound. The indenture provided that ALL "rents, issues, profits, income and returns" from the mortgaged property were pledged by Tuolumne to Anglo as trustee, to secure payment of the notes held by the plaintiff.

As far as the payments for the *second* mortgage are concerned, it is stipulated that *Tuolumne* made the payments to the plaintiff from the operation of the dredge. There was nothing wrongful in this.

Indubitably, there was "enrichment" here on the part of the plaintiff when the proceeds from the operation of the dredge were turned over to it. But that is not sufficient to support Johnson's counterclaim. The crucial question remains: Was this enrichment "unjust"?

In Bailis v. Reconstruction Finance Corporation, 3 Cir., 1942, 128 F.2d 857, 859, the Court said:

"* * * one who is unjustly enriched at the expense of another may be required for that reason alone to make restitution. Restatement, Restitution (1937) § 1. But, in order to establish unjust enrichment, (it) is not enough merely to show one's retention of a benefit. *The retention must also be unjust.* Restatement, Restitution (1937) § 1, comment c." (Emphasis supplied.)

Under the pleadings, the stipulation, and the exhibits in this case, Johnson has completely failed to establish "unjust enrichment" on the plaintiff's part.

8. *Johnson's Claim Of Fraud Is Likewise Unfounded.*

The fourth "Cause of Counterclaim" filed by Johnson asserts that *"During the period of the operation of the dredge between 1938 and the present time,* plaintiff did improperly and unlawfully pay to itself from the proceeds of the operation of the dredge a sum or sums greatly in excess of the amount above alleged to be due Johnson, which payments were applied *in large part* to satisfaction of a second mortgage," etc.

(Emphasis supplied.) Here again, because of the generality of the pleading, it is impossible to assert that, as a matter of fact, Johnson is relying solely upon an alleged misapplication of the dredge-operation proceeds to paying off *the second mortgage*, as the basis of his charge of fraud. It will be remembered that, since the second mortgage was completely satisfied by September 4, 1942, Johnson's claim of fraud would be barred, as in the case of unjust enrichment, by the Federal six-year statute of limitations.

Although the record is completely bare of pleading or proof of any other payment to the plaintiff that could possibly be tortured into forming the basis of an allegation of fraud, in order to place the matter beyond doubt, the Court included this fourth "Cause of Counterclaim" in its inquiry addressed to counsel in the letter of May 22, 1953. The gist of that correspondence has already been set forth.

Accordingly, the Court has likewise weighed this fourth counterclaim on the merits.

Johnson does not deal in its brief with the claim of fraud, except obliquely and in connection with the counterclaim of undue enrichment. Because of this, the plaintiff argues that this fourth counterclaim has been abandoned.

However that may be, Johnson's cry of "Fraud!" has no merit. What has already been said relative to unjust enrichment applies here. There is absolutely nothing in the record to support a charge of dishonesty on the part of the plaintiff.

"Fraud" is a strong word, and should be used with caution, either in or out of a courtroom, against either a Government agency or anyone else.

9. *The Plaintiff Is Not Chargeable With the Duty to Reimburse Johnson for the Sales Tax.*

■ The mere fact that, under Article XIII of the Agreement between Tuolumne and Johnson, any sales taxes assessed by the State of California were to be paid by Tuolumne, does not entitle Johnson to reimbursement from the *plaintiff* for any such taxes that Johnson may have paid under the provisions of Article X of the same Agreement.

■ Nor does the fact, if it be a fact, that, "upon many occasions within the past four years plaintiff has admitted (1) the amount of such tax as above alleged was due and payable to Johnson under the contract", make the plaintiff liable therefor. The Court knows of no principle of written or unwritten law that makes a party liable for a third party's debt by merely "admitting", without more, that the third party owes that debt.

This seems to be but another instance of grasping at straws in an effort to make Uncle Sam pay for Johnson's own improvidence or misfortune. Indeed, the point is not stressed in the latter's brief. At any rate, it has no merit.

10. *Conclusion*

Johnson's quinquefoliate counterclaim must fail either on the merits or because of the incidence of the six-year Federal statute of limitations.

Even if it be assumed that Johnson is a "third-party beneficiary" under the first indenture and chattel mortgage, it is not exempt from the operation of the statute of limitations. And that statute, as is disclosed by Johnson's own pleadings, commenced to run on September 24, 1938, when the plaintiff delivered to Tuolumne the final installment of the loan covered by the indenture of May 11, 1937.

According to the law of California, whatever lien Johnson may have had is barred together with the principal obligation. And, in any event, in the chattel mortgage, by which Johnson is bound under the terms of its agreement with Tuolumne, the latter warranted its title to be free and clear of all liens.

The third and fourth counterclaims, which are cognate, asserting as they do "unjust enrichment" and fraud, respectively, are clearly without foundation on the merits. The record discloses neither

overreaching nor dishonesty on the plaintiff's part.

Finally, the fifth counterclaim, based as it is upon the quaint theory that A can be held liable because he "admits" that B owes C a debt, is clearly untenable.

Accordingly, the plaintiff's motion for a summary judgment dismissing all of Johnson's counterclaims is granted. Johnson's counterclaims against the plaintiff are dismissed, with costs.