CITY AND COUNTY OF SAN FRANCIS-
CO, a Municipal Corporation,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14275.

United States Court of Appeals
Ninth Circuit.

May 27, 1955.

As Modified on Denial of Rehearing
Aug. 19, 1955.

Dion R. Holm, City Atty., Frank J. Needles, Deputy City Atty., Thomas M. O'Connor, Public Utilities Counsel, City and County of San Francisco, San Francisco, Cal., for appellant.

Warren E. Burger, Asst. Atty. Gen., Benjamin Forman, Paul A. Sweeney, Attys., Department of Justice, Washington, D. C., Lloyd H. Burke, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and HEALY and McALLISTER, Circuit Judges.

DENMAN, Chief Judge.

Appellant, hereafter City, appeals from a judgment of the district court holding it liable to the United States for the actual cost of the latter's maintenance and repair of certain trails, roads and bridges in Yosemite National Park during the years 1929 to 1940.

Congress in the Raker Act, 38 Stat. 242, granted to San Francisco, having rights to certain water in the Yosemite National Park Reservation, the right to erect and maintain dams, canals and other facilities. To keep the Park open to visitors, campers and hikers and to facilitate San Francisco operations, roads and trails were constructed, the cost of which and their maintenance is to be paid by San Francisco, the latter under 9(q) of the Act, providing:

"That the said grantee shall furnish water at cost to any authorized

occupant within one mile of the reservoir *and in addition to the sums provided for in section seven it shall reimburse the United States Government for the actual cost of maintenance of the above roads and trails in a condition of repair as good as when constructed.* [Emphasis added.]"

San Francisco does not question that in the years 1929 to 1940 the United States expended the amount of money claimed. The City's contentions are (A) that by an agreement with the Secretary of the Interior, which the United States concedes was made, it was relieved of the obligation of Section 9(q) and (B) that in any event the United States is estopped to deny the validity of the agreement.

■ A. We agree with the district court that Congress gave the Secretary of the Interior no power to make such an agreement. There is no merit to the contention that such right is given by the general provision of Section 9(r) providing:

> "That in case the Department of the Interior is called upon, by reason of any of the above conditions, to make investigations and decisions respecting the rights, benefits, or obligations specified in this Act, which investigations or decisions involve expense to the said Department of the Interior, then such expense shall be borne by said grantee."

The city points out that the Raker Act in 42 instances gives the Secretary of the Interior various specific powers in administering the Act. None confers the power to abrogate the city's obligations under § 9(q). Even if § 9(r) were broad enough to give the secretary such power, which it does not, this requires the application of the rule that such a general provision is limited by the specific provisions, each conferring a lesser power. Baltimore Nat. Bank v. State Tax Comm., 297 U.S. 209, 215, 56 S.Ct. 417, 80 L.Ed. 586.

Nor is there any merit to the contention that the administrative interpretation of a statute which is contrary to its clear meaning controls the construction of the Act. Jewell Ridge Coal Corp. v. Local, No. 6167, 325 U.S.161, 169, 65 S.Ct. 1063, 89 L.Ed. 1534; United States v. Phelps Dodge Mercantile Co., 9 Cir., 157 F.2d 453, 456; Cf. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796.

Further in the Congressional debate over the Act, Congressman Raker, its author, clearly states that no cabinet or executive officer has any power to alter the conditions respecting the city's obligation to pay for the maintenance of the roads and trails, in the following from 50 Cong.Rec. 3900–3901:

> "Mr. Elder: Is there any danger that San Francisco will come back at some time in the future and ask for an appropriation from the Government, as they did on a celebrated occasion in relation to an exposition?
>
> "Mr. Raker: No; for many reasons.
>
> "Mr. Elder: Well, I would like to hear them.
>
> "Mr. Raker: The question is, they are getting this right, practically a purchase, *upon conditions provided for by this bill—not to be fixed by any Cabinet Officer or executive officer, but fixed in this bill by the Congress itself*—so there is every reason, it seems to me, why the city and county of San Francisco can not come back, because this grant, when made, compels the city and county of San Francisco to file with the Secretary of the Interior its regular acceptance of this grant, and therefore it is bound on that account just the same as any other grant by the Government—[Emphasis added]."

This was immediately followed by the statement of Congressman Kahn, a rep-

**739**

resentative elected from San Francisco, as follows:

"Mr. Kahn: I want to call the attention of the gentleman from California to the fact that *Congress, under this bill, still retains complete control of the fixing of charges for the privileges granted.* [Emphasis added.]

"Mr. Raker: Yes.

"Mr. Kahn: *Under the terms of this bill Congress does not relinquish its right to fix the charges that will be paid by the city. It is not left to any executive officer, but it is always in the hands of the Congress of the United States.* [Emphasis added.]"

 (B) *Estoppel.* There is no question that no statute of limitations applies to this case. Appellant argues that the United States is estopped to now exert its claim by the action of the Secretary of the Interior together with appellee's long acquiescence of ten years before making a claim and nineteen years before bringing suit. Having determined that the Secretary's agreement is invalid, this contention is disposed of adversely to the city by the decision in United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050.

 There the city in violation of the Raker Act had been disposing of its Hetch Hetchy power to public utilities. The Department of the Interior wrongly interpreted the law as permitting such action by the city and otherwise by the department's conduct authorized the violation. This, the city claimed, created an estoppel against the United States. In disposing of the contention the Supreme Court held at pages 31 and 32 of 310 U.S., at page 757 of 60 S.Ct.:

"We cannot accept the contention that administrative rulings—such as those here relied on—can thwart the plain purpose of a valid law. As to estoppel, it is enough to repeat that '* * * the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit.' [Citing Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791.]"

The judgment is affirmed.