Tom STONE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16563.

United States Court of Appeals
Eighth Circuit.

Jan. 13, 1961.

Albert V. Hass, Chariton, Iowa, for appellant.

Conrad A. Amend, Asst. U. S. Atty., Des Moines, Iowa, for appellee; Roy W. Meadows, U. S. Atty., and Richard J. Wells, Asst. U. S. Atty., Des Moines, Iowa, on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

RONALD N. DAVIES, District Judge.

This is an appeal by the defendant, Tom Stone, from a summary judgment entered against him in the United States District Court for Southern Iowa. The action was commenced by the United States of America to recover damages from the defendant based upon monies erroneously paid to him for the 1955 marketing year as incentive payments under the National Wool Act of 1954 (7 U.S.C.A. § 1781 et seq.). The complaint

was in four counts, the first two seeking recovery under the False Claim Act (31 U.S.C.A. § 231 and § 232) and the third and fourth counts, after amendment, seeking recovery based upon mistake of fact or law. Jurisdiction is conferred by 28 U.S.C.A. § 1345.

The trial court granted summary judgment for the plaintiff on Counts Three and Four and certified under Rule 54(b), F.R.Civ.P., 28 U.S.C.A., that final judgment be entered in favor of the plaintiff, thus making it appealable.

The defendant Stone had been in the wool producing business for many years prior to 1955 on farms owned or leased by him in Lucas County, Iowa. He had also been a wool buyer and operated a wool house in Chariton, Iowa, which he called the Tom Stone Cordage Company. Sometime during 1955 the defendant inquired of one Guilford F. Davis, the Lucas County A.S.C. office manager, what was necessary for him to do in order to qualify for payments under the wool program instituted by the United States Department of Agriculture. Davis informed defendant that he would have to sell his wool before March 31, 1956, and that his application for payments must be supported by sales invoices made out at the time of sale showing the quantity of wool, date of sale, price and the signature of the buyer. The defendant then inquired whether he could sell the wool shorn from sheep on his farms to his wool house, the Tom Stone Cordage Company. Davis advised the defendant that such sales would qualify provided bona fide evidence showed the sales from defendant's farms to the cordage company defendant owned.

On two occasions in 1955 defendant filed in Lucas County A.S.C. office applications for incentive payments (CCC Wool Form 46) and the original sales documents evidencing the wool sales as required by the regulations. (6 C.F.R. Sec. 472.600 et seq.; 20 F.R. 2011.) The transactions as shown by the sales tickets were sales in which the defendant acted both as seller and buyer. These purported sales do not, of course, constitute sales within the meaning of the Wool Act and regulations implementing the Act, nor does the defendant so contend, but he argues that summary judgment should not have been granted against him, insisting there were issues of fact for determination.

The National Wool Act of 1954 provided that the Secretary of Agriculture should support the prices of wool and mohair, respectively, to the producers thereof by means of loans, purchases, payments or other operations, through the Commodity Credit Corporation. 7 U.S.C.A. § 1782.

Defendant contends that when Congress chartered the Commodity Credit Corporation and gave it power to sue or be sued, governmental immunity was waived; and that when the Corporation engages in private litigation, the Court should view the controversy in the same manner it would between private litigants; and that if the United States substitutes itself as the real party in interest, no greater advantages would inure. It is then argued that the defense of estoppel was available to the defendant against the United States by reason of the alleged acts and advice of the representative of Commodity Credit Corporation upon which the defendant relied; and further, that the defendant should have been allowed to show that the United States had not been damaged to the full extent of the incentive payments and that defendant had an equitable right to retain the payments based upon his ultimate marketing of the same wool during the marketing year, which ultimate marketing met the requirements of the Wool Incentive Program and which would have entitled defendant to incentive payments had he made application instead of relying on plaintiff's agent.

The defendant's contention that Commodity Credit Corporation and the United States are not one and the same when the Corporation is involved in litigation is rejected on the basis of the holding in Rainwater v. United States, 356 U.S. 590, 591, 592, 78 S.Ct. 946. 948, 2 L.Ed.2d 996.

"Commodity is an 'agency and instrumentality of the United States, within the Department of Agriculture, subject to the general supervision and direction of the Secretary of Agriculture.'[3] It was created by Congress to support farm prices and to assist in maintaining and distributing adequate supplies of agricultural commodities. Its capital was provided by congressional appropriation. Any impairment of this capital, which at times has been great due to the nature of its activities,[4] is replaced out of the public treasury; any gains are returned to that treasury. All of its officers and other personnel are employees of the Department of Agriculture and are compensated as such. Like other government corporations, Commodity is subject to the provisions of the Government Corporation Control Act which provides such close budgetary, auditing and fiscal controls that little more than a corporate name remains to distinguish it from the ordinary government agency.[5] *In brief, Commodity is simply an administrative device established by Congress for the purpose of carrying out federal farm programs with public funds.*" (Emphasis supplied.)

■ Moreover, as it was so aptly stated in Reconstruction Finance Corp. v. Tuolumne Gold Dredging Corp., D.C., 137 F.Supp. 855, 857, affirmed, Walter W. Johnson Co. v. R. F. C., 9 Cir., 230 F.2d 479, certiorari denied 352 U.S. 832, 77 S.Ct. 48, 1 L.Ed.2d 52:

"Courts administer justice, not alms. As has so often happened in recent years both in international and intranational affairs, the United States is here being asked to pay for the misadventure or the improvidence of others.

"[1] Fortunately, however, we have a Supreme Court that is steadily moving away from this eleemosynary philosophy of government. In Federal Crop Insurance Corporation v. Merrill, 1947, 332 U.S. 380, 383–384, 68 S.Ct. 1, 3, 92 L.Ed. 10, the Court said:

" 'It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rulemaking power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. (Cases cited.)' "

■ Where monies are erroneously paid by agents of the United States, whether the error be one of fact or of

---

3. See the Commodity Credit Corporation Charter Act, 62 Stat. 1070, as amended, 15 U.S.C.A. § 714 et seq.

4. See, e. g., 67 Stat. 222; 70 Stat. 238, 15 U.S.C.A. § 713a–10.

5. 59 Stat. 597, as amended, 31 U.S.C.A. § 841 et seq.

law, the Government may always recover the money improperly paid. United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932; Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L. Ed. 1099; Wisconsin Central R. R. Co. v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399.

 We then address ourselves to the defendant's contention that Iowa court decisions hold that money may not be recovered in private litigation when paid under a simple mistake of fact unless fraud or something akin thereto is also present. This contention too we must reject since it is clear that federal rights are governed by controlling federal law.

In United States v. Independent School Dist. No. 1, 209 F.2d 578, 580, 581, United States Court of Appeals for the Tenth Circuit held:

"[2] The funds which the government seeks to recover were disbursed to a subdivision of the state under authority of federal law and in the exercise of a constitutional function. And they were paid under conditions and circumstances which raise a duty or an obligation to repay that which was mistakenly disbursed. In the performance of the constitutional function there is no express or implied disposition to subordinate correlative federal rights to state law, and no reason is suggested or apparent for conditioning the government's rights or remedies upon state law. Whether, therefore, the asserted remedy be for money had and received or restitution for unjust enrichment, the right to recover under controlling federal law is plain."

■ ■ Finally the defendant contends that he should have been permitted to interpose the defense of estoppel. This argument is succinctly answered, we think, in Utah Power & Light Co. v. United States, 243 U.S. 389, 408, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791:

"Of this it is enough to say that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." (Citing cases).

See also United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; and City and County of San Francisco v. United States, 9 Cir., 223 F.2d 737, certiorari denied 350 U.S. 903, 76 S.Ct. 181, 100 L.Ed. 793.

We conclude that the District Court properly granted plaintiff's motion for summary judgment.

Affirmed.