# BALTIMORE NATIONAL BANK v. STATE TAX COMMISSION OF MARYLAND.

No. 283.   Argued January 10, 1936.—Decided February 3, 1936.

*Messrs. Edwin F. A. Morgan* and *Gaylord Lee Clark* for petitioner.

*Mr. Herbert R. O'Conor*, Attorney General of Maryland, and *Mr. William L. Henderson*, Assistant Attorney General, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

This case presents the single question whether shares in a national bank, subscribed for and owned by the Reconstruction Finance Corporation, may be taxed by a state.

The Baltimore Trust Company closed its doors in February, 1933, and was unable to reopen. It was reorganized in August of the same year as a national banking association under the name of the Baltimore National Bank with a place of business in Baltimore, Maryland. To set the business going, the Reconstruction Finance Corporation subscribed for the entire issue of preferred stock, 10,000 shares of the par value of $1,000,000. Following a provision of the Maryland Code (1935 Supp., Article 81, § 15 e*), the State Tax Commission upheld a tax upon the shares, overruling thereby the protest of the

---

\* "Shares of stock assessable under this section shall be taxed to the several owners thereof, and the taxes thereon shall be debts of such owners, but may be collected in each case from the bank or other corporation, which shall be bound to pay the same for account of its

bank, which made a claim of immunity under the Federal Constitution for the benefit of the shareholder as well as for itself. The order made by the Commission was reviewed upon appeal by the Circuit Court of Baltimore City, which canceled the assessment. In accord is a ruling of a District Court of the United States for the Western District of Kentucky. *United States* v. *Lewis*, 10 F. Supp. 471. Upon an appeal by the Commission to the Court of Appeals of Maryland, the order of the Circuit Court was reversed and the assessment reinstated. 169 Md. 65; 180 Atl. 260. To settle an important question as to the taxing power of a state, a writ of certiorari issued from this court.

The Reconstruction Finance Corporation was organized in 1932 to give relief to financial institutions in a national emergency and for other and kindred ends. Act of January 22, 1932, 47 Stat. 5; Act of July 21, 1932, 47 Stat. 709; 15 U. S. C., c. 14. At the time of its creation and continuously thereafter the United States has been and is the sole owner of its shares. The purpose that it has aimed to serve is not profit to the government, though profit may at times result from one or more of its activities. The purpose to be served is the rehabilitation of finance and industry and commerce, threatened with prostration as the result of the great depression. We assume, though without deciding even by indirection, that within *McCulloch* v. *Maryland*, 4 Wheat. 316, a corporation so conceived and operated is an instrumentality of government without distinction in that regard between one activity and another. Even on that assumption taxation by state or municipality may overpass the usual limits

---

stockholders whether or not dividends are declared thereon, as if such corporations were the ultimate taxpayer, but may obtain reimbursement therefor from the respective stockholders, and may charge the same in reduction of any amounts due to the several shareholders as dividends or otherwise."

if the consent of the United States has removed the barriers or lowered them.

We think consent has been so given where shares in a national bank are the property to be taxed, though an agency of government is the owner of the assets subjected to the burden. By § 5219 of the Revised Statutes (12 U. S. C., § 548; cf. Act of June 3, 1864, 13 Stat. 99, 112; Act of February 10, 1868, 15 Stat. 34) "all" the shares of a national banking association whose principal place of business is within the limits of a state are made subject to taxation at the pleasure of the legislature with conditions as to form and method not important at this time. This court has held that Congress in saying "all" meant exactly what it said, and that shares in a national bank belonging to another national bank were taxable to the same extent as if they belonged to any one else. *Bank of Redemption* v. *Boston,* 125 U. S. 60, 69, 70; *Bank of California* v. *Richardson,* 248 U. S. 476, 483; *Bank of California* v. *Roberts,* 248 U. S. 497; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103. "The manifest intention of the law is to permit the State in which a national bank is located to tax, subject to the limitations prescribed, all the shares of its capital stock without regard to their ownership." *Bank of Redemption* v. *Boston, supra,* at p. 70. True, as we have assumed, the Reconstruction Finance Corporation is a governmental agency, but so also is a national bank. *McCulloch* v. *Maryland, supra.* The question thus reduces itself to this, whether there is sufficient reason to believe that immunity from taxes of this kind has been given to the one agency, though by long accepted decisions it has been denied to the other.

In such a situation the burden is heavily on the suitor who would subject the word "all" with its uncompromising generality to an unexpressed exception. The petitioner reminds us that the ends to be served by the

Reconstruction Finance Corporation are even more predominantly public than those of a national bank, since the bank, while promoting the fiscal needs of the government, is acting at the same time for the profit of its stockholders. The suggestion has its force, but force inadequate, we think, to carry to the goal. Its inadequacy is the more apparent when the capacity of the corporation to become a subscriber to the stock is followed to the sources. Until March, 1933, there was no power on the part of national banks to issue preferred shares. Act of March 9, 1933, Title III, 48 Stat. 5; amended June 15, 1933, 48 Stat. 147; 12 U. S. C., § 51 (a). Until then there was no power on the part of the Reconstruction Finance Corporation to subscribe for such shares or indeed for any others. Act of March 9, 1933, Title III, 48 Stat. 5, 6; amended March 24, 1933, 48 Stat. 20, 21; 12 U. S. C., '§ 51 (d). By statutes then enacted a national bank was authorized to issue preferred shares of one or more classes upon the approval first obtained of the Comptroller of the Currency. The Reconstruction Finance Corporation was authorized at the same time, with the approval of the Secretary of the Treasury, to subscribe for preferred shares in national banks and also in state banks and trust companies that were in need of funds for capital purposes, subject to the proviso that no such subscription was to be permitted unless the holders of the preferred shares were exempt from double liability. This proviso in and of itself is highly significant of the understanding of the Congress that upon the acceptance of the shares the corporation would be exposed to the same measure of liability and would stand in the same position as shareholders in general.

Other signposts of intention seem to point us the same way, though perhaps with less directness. The newly created power to issue preferred shares was given by an act for the governance of banks (48 Stat. 5), now incor-

porated in the United States Code as part of title 12, regulating banks and banking. 12 U. S. C., § 51 (a). The newly created power to subscribe for preferred shares was given by the same act. 48 Stat. 5, 6; amended March 24, 1933, 48 Stat. 20, 21; 12 U. S. C., § 51 (d). The two are incidents and aspects of a unitary scheme. No one will deny that shares put out under this act would have been taxable to the holders in the event that some one other than this particular corporation had acquired the new issue through purchase or subscription. If they were to be exempt in the hands of a particular corporation, empowered to acquire them by an associated section, then was the appropriate time for announcing the exception. Instead there is a clear assumption, brought out into full relief by the exclusion of shares chargeable with double liability, that subscriptions when permitted are to stand on an equality, irrespective of their source. A shareholder in the banking system is a shareholder for every purpose, accepting the attendant liabilities along with the attendant powers.

We have reserved to the last an argument strongly pressed in behalf of the petitioner, but one more easily appraised in the light of what has gone before. The act for the formation of the Reconstruction Finance Corporation has its own provisions for exemption, which have now to be considered. "The corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation . . . except that any real property of the corporation shall be subject to . . . taxation to the same extent according to its value as other real property is taxed." 47 Stat. 5, 9, 10; 15 U. S. C., § 610.[1] The petitioner insists that the tax now in controversy is forbidden by that section. The contention is plausible, yet it will not prevail against analysis. For

---

[1] The real property of national banks is subject to a like exception. R. S. § 5219; 12 U. S. C.. § 548, subdivision 3.

the tax now in controversy, whatever its indirect effect, is not laid directly upon the capital, reserves, or surplus of the corporation claiming the immunity or accorded the exemption. It is laid upon the shares in another corporation, a member of the banking system, which must pay it in the first place (Maryland Code, 1935 Supp., Article 81, § 15 e; *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 518), though with a right to be made whole thereafter. "Capital, reserves and surplus" are not taxable by a state if they belong to the Reconstruction Finance Corporation. Neither are they taxable if they belong to a national bank. *First National Bank of Gulfport* v. *Adams,* 258 U. S. 362; *Des Moines Bank* v. *Fairweather, supra,* at pp. 106, 107; *Domenech* v. *National City Bank,* 294 U. S. 199, 204. This has not been thought to exclude the taxation of such a bank upon its shares in other banks, members of the federal system. *Bank of Redemption* v. *Boston, supra; Bank of California* v. *Richardson, supra; Bank of California* v. *Roberts, supra; Des Moines National Bank* v. *Fairweather, supra.* With hardly more reason may words of like extension have a broader meaning here. An earlier act, specific in its coverage, will be read as an exception to a later one directed to investments generally. "It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Kepner* v. *United States,* 195 U. S. 100, 125; cf. *Ginsberg & Sons* v. *Popkin,* 285 U. S. 204, 208; *In re East River Co.,* 266 U. S. 355, 367; *Washington* v. *Miller,* 235 U. S. 422, 428; *Rosencrans* v. *United States,* 165 U. S. 257, 262; *Red Rock* v. *Henry,* 106 U. S. 596, 603. All shares in national banks—no matter by whom owned—shall be subject to taxation. R. S. § 5219. Across the petitioner's path there still lies the stumbling block of that uncompromising "all."

The judgment is

*Affirmed.*