**Gerys DESSALERNOS, Appellant,**

**v.**

**Joseph SAVORETTI, District Director, United States Immigration and Naturalization Service, Miami, Florida, Appellee.**

**No. 16340.**

United States Court of Appeals
Fifth Circuit.
April 22, 1957.

David W. Walters, Miami, Fla., for appellant.

Richard R. Booth, Asst. U. S. Atty., Miami, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment in an action to review a determination of the Board of Immigration Appeals by which the district court held that appellant is subject to deportation and is statutorily ineligible for waiver of deportation.

The undisputed facts are that appellant is an alien, a native and a citizen of Greece, who last entered the United States on March 11, 1947, as a seaman on a Certificate of Admission permitting a stay of not over 29 days; no extension has ever been applied for or granted. In 1952 appellant registered for the first and only time under the provisions of the Alien Registration Act,[1] and he has since failed to file the annual registration required by 8 U.S.C.A. § 1305. The Special Inquiry Officer determined, and the Board of Immigration Appeals and the district court agreed, and appellant does not dispute, that the failure to register was willful and without reasonable excuse.

Appellant is thus deportable both as a nonimmigrant who has failed to comply with the conditions of that status, 8 U.S.C.A. § 1251(a) (9), and as an alien who has failed to comply with the provisions of the Alien Registration Act, 8 U.S.C.A. § 1251(a) (5). The only issue is whether appellant's application for suspension of deportation should be treated as falling under section 1254(a) (1) of the Title, under which he could qualify for discretionary relief by the Attorney General,[2]

1. 8 U.S.C.A. § 1302, formerly 8 U.S.C. § 452 (1946 ed.).

2. § 244(a) (1) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1254(a) (1), provides as follows:
"§ 1254. Suspension of deportation— Adjustment of status for permanent residence; contents
"(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—
"(1) applies to the Attorney General within five years after the effective date of this chapter for suspension of deportation; last entered the United States more than two years prior to June 27, 1952; is deportable under any law

or under section 1254(a) (5), under which he cannot qualify.[3]

Appellant contends that since he qualifies under one category established by section 1254(a) his application for suspension should be considered under that paragraph, even though he is ineligible under another category whose provisions are applicable to his situation but whose requirements he fails to meet. In particular, appellant argues that Congress, in drafting the 1952 Act, had wished to preserve the right of all aliens whose last entry had occurred before June 27, 1950, (two years prior to date of enactment of the Act) to apply for suspension of deportation under substantially the provisions and standards of the pre-1952 law, as long as they filed their application at any time before December 31, 1957 (five years after the effective date of the chapter). To support this prop-

of the United States and is not a member of a class of aliens whose deportation could not have been suspended by reason of section 19(d) of the Immigration Act of 1917, as amended; and has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child, who is a citizen or an alien lawfully admitted for permanent residence; or * * *."

The application for suspension was filed on August 10, 1954, more than seven years after appellant's entry; the failure to register annually as required by law would apparently not automatically make him a person not "of good moral character" as that term is defined by 8 U.S.C.A. § 1101(f), nor would it make him ineligible for suspension of deportation under the now repealed provisions of § 19(d) of the Immigration Act of 1917, as amended (formerly 8 U.S.C. § 155(d) (1946 ed.)), which read as follows:

"§ 155. Deportation of undesirable aliens generally

    *     *     *     *     *

"(d) The provisions of subsection (c) [permitting suspension of deportation] shall not be applicable in the case of any alien who is deportable under (1) section 137 of this title; (2) section 175 of Title 21; (3) section 156a of this title; (4) any of the provisions of so much of subsection (a) of this section as relates to criminals, prostitutes, procurers, or other immoral persons, the mentally and physically deficient, anarchists, and similar classes; or (5) subsection (b) of this section."

None of the cited exclusions include the failure of an alien to register as required by law; see footnote 7, infra.

**3.** § 244(a) (5) of the Act, 8 U.S.C.A. § 1254(a) (5), provides in part as follows:

"§ 1254. Suspension of deportation—Adjustment of status for permanent residence; contents

"(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—

    *     *     *     *     *

"(5) is deportable under paragraphs (4)–(7), (11), (12), (14)–(17), or (18) of section 1251(a) of this title for an act committed or status acquired subsequent to such entry into the United States or having last entered the United States, within two years prior to, or at any time after June 27, 1952, is deportable under paragraph (2) of section 1251 (a) of this title as a person who has remained longer in the United States than the period for which he was admitted; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence."

Appellant of course has not been a resident of the United States for 10 years since his last failure to register in January 1954, which is an "act" that makes him liable to deportation under § 1251(a) (5).

osition he points to the provisions of the Act, in which, as detailed below, a generally clear distinction is indeed made, in several paragraphs listed in the disjunctive, between those aliens who entered before and those who entered on or after June 27, 1950; in addition he refers us to the report of the Senate Judiciary Committee which first considered these provisions, which stated:

"The subcommittee recommends that the present suspension of deportation provisions of the law be abolished within 5 years and that no alien who entered the United States within a period of 2 years prior to the enactment of the proposed legislation shall be eligible under the present suspension provision of the law, as modified."[4]

and then continued with its recommendations for the altered provisions of the new law.

The Government argues, in effect, that the provisions are meant to be mutually exclusive, and that since paragraph (5) refers specifically to the situation of the appellant, i. e. to one who violated the Alien Registration Act, while paragraph (1) only refers generally to aliens "deportable under any law of the United States," under the usual rules of statutory construction he must be treated as a member of the "particular class" into which he falls. Baltimore National Bank v. State Tax Commission of Maryland, 297 U.S. 209, 215, 56 S.Ct. 417, 80 L.Ed. 586; 82 C.J.S. Statutes § 347 b.

The question raised is unfortunately not as easily resolved as each of the parties would have it; as in many cases under this Act the courts must resort to a close study of the complex interrelation of the several provisions of both the present and the former law, both internally and, as required by the frequent crossreferences, with each other. On this particular narrow issue there appear to be no cases to guide us[5] nor has any legislative history more helpful than the general language quoted above been called to our attention. To arrive at the most reasonable construction it will therefore be necessary to examine the entire background and pattern of the pertinent sections.

Prior to 1940 there was no statute under which relief from deportation could be granted, and in general such aid could only be secured by means of a private bill in Congress. By the Alien Registration Act of 1940 the Attorney General was given discretionary authority to suspend deportation of aliens not guilty of any major misbehavior, defined by excluding from the relief provision aliens who fell into any of a number of listed categories of undesirables, upon a showing of good moral character for five years and of the threat of serious economic detriment to any legally resident, close relative of the alien, unless Congress passed a concurrent resolution disapproving of such a suspension. 54 Stat. 671, 8 U.S.C. §§ 155 (c), (d) (1946 ed.). In 1948 the provision was changed by *also* permitting the suspension of deportation of aliens not in the excluded categories upon a mere showing of seven years residence (regardless of considerations of hardship to them or to their families), but requiring that in *all* cases of suspension Congress pass an affirmative concurrent resolution approving the stay. 62 Stat. 1206, 8 U.S.C. § 155(c) (1946 ed., Supp. 11, 1949).

The 1952 Act completely recast the former suspension provisions. Five general categories of aliens were designated by successive paragraphs of 8 U.S.C.A. § 1254(a): (1) those whose "offense" did not disqualify them for suspension under the former Act (referred to as § 19(d) of the Immigration Act of 1917, as amended), who had entered the United States, properly or improperly, before June 27, 1950, and who prior to their application for suspension of deportation

---

4. "Report of the Senate Committee on the Judiciary pursuant to S.Res. 137," S.Rep. No. 1515, 81st Cong., 2nd Sess., April 20, 1950.

5. See, however, the just reported district court case, Sevitt v. Del Guerico, D.C. S.D.Cal., 150 F.Supp. 56, which reaches a result contrary to our's below.

had resided here for at least seven years and had maintained a good moral character; (2) those whose deportability arises from some circumstance existing at or before their entry, but not involving any major misbehavior or improper entry (defined by excluding those aliens falling into category (4)), whose entry was subsequent to June 26, 1950, and who have maintained at least five years of residence with good moral character up to the time of application; (3) those whose situation is similar to that of category (2) except that their deportability arises from circumstances after entry; (4) those whose deportability arises either from an improper entry or from major misbehavior before entry, who entered after June 26, 1950, and who have maintained at least ten years of residence with good moral character; (5) those whose deportability arises either from overstaying their permitted time in the United States or who belong in one of eleven enumerated categories of major undesirables (based generally on post-entry activities), regardless of their date of entry, who have maintained at least ten years of residence with good moral character. In all categories suspension may only be effected if deportation would "result in exceptional and extremely unusual hardship" to the alien or to a legally resident close relative.[6] Also, in suspensions under paragraphs (1)–(3) the relief may be granted unless disapproved by a concurrent resolution of Congress, while under paragraphs (4) and (5) an affirmative resolution is required to make the stay permanent.

In general the pattern of the new Act is thus clear: it continues in general terms and for a limited period the category of those who might seek suspension of deportation under the former Act, provided the alien entered before June 27, 1950, substituting, however, a uniform seven years residence with good moral character requirement and the harsher "hardship" provision of the new Act, and

restoring the pre-1948 requirement of a mere absence of congressional disapproval. In general aliens in similar circumstances who entered after June 26, 1950, can now qualify for suspension after five years of residence under the provisions of paragraphs (2) and (3), except if their entry was improper, in which case they fall under the ten year requirement of paragraph (4), or if their deportability arises by reason of failure to register (§ 1251(a) (5)) or because of violation of war emergency laws (§ 1251 (a) (17)) in which case the ten year requirement of paragraph (5) applies. In addition, practically all aliens whose deportation could not have been suspended at all under the former Act may now qualify after ten years under the provisions of paragraphs (4) and (5). Also the racial eligibility provision of the former Acts has been removed, but additional restrictions are imposed on citizens of contiguous countries. It thus appears that Congress very thoroughly reshaped the statute, easing the requirements somewhat by reducing the qualifying time in some instances, eliminating the need for positive congressional approval in many situations, and in making it possible for some persons to qualify for deportation after ten years of reputable residence and subject to positive congressional approval who could not have qualified at all under the former law; on the other hand requirements were made more severe in other ways, by adopting a rather stricter "hardship" test and by changing the five or seven year requirement to ten for those guilty of certain offenses—including the failure to register under the Alien Registration Act. Even with respect to the pre-June 27, 1950, category changes were made, including the imposition of the uniform seven years residence with good moral character, the new "hardship" clause, and the December 31, 1957, terminal date for application. It cannot be said that the provisions as a whole are meant to be generally more or

6. This requirement was intended to be harsher than that in the former statutes. See S.Rep. No. 1137, 82nd Cong., 2nd Sess., quoted in 8 U.S.C.A. §§ 1–1280 at pages 67–68.

less restrictive than the former ones; all that can be said is that they appear to be more selectively drawn. Nor can it be said that there was an apparent congressional intent to preserve inviolate all the rights under the former statutes of the pre-June 27, 1950, category.

It should also be noted that for the most part the categories are mutually exclusive.[7] Apparently practically the

7. Paragraph (1) excludes all those in paragraphs (2)–(4) and part of paragraph (5) by means of the June 27, 1950, cut-off date; paragraph (2) deals with deportability arising from circumstances at or before entry, while paragraph (3) explicitly and paragraph (5) implicitly *deals with those arising from post-entry* circumstances; both paragraph (2) and (3) explicitly exclude aliens falling into paragraph (4) and paragraph (3) also explicitly excludes those falling into paragraph (5); the provisions of paragraphs (4) and (5) are also explicitly or implicitly mutually exclusive; paragraph (5) in its principal part lists eleven grounds of deportability to which it applies, nine of which match exclusions under the former act which are now incorporated into paragraph (1), and one inclusion in paragraph (4) similarly matches one more exception to paragraph (1):

§ 19(d) of the 1917 Act, as amended, 8 U.S.C. § 155(d) (1946 ed.) (quoted in footnote 2, supra) includes the following exceptions, which may be matched as follows with the inclusions in paragraphs (4) and (5):

| Exclusions from paragraph (1) (all references to former sections of Title 8) | Inclusions in paragraphs (4) and (5) (All references to present sections of Title 8) |
| --- | --- |
| § 155(d) (1) referring to § 137: anarchists, subversives, etc. | § 1251(a) (7)* |
| § 155(d) (2) referring to 21 U.S.C.A. § 175: importing narcotics | § 1251(a) (11)* |
| § 155(d) (3) referring to § 156a: trading in narcotics | § 1251(a) (11)* |
| § 155(d) (4) referring to § 155(a): | |
| excludable at time of entry | § 1251(a) (1)** |
| anarchists, subversives, etc. | § 1251(a) (7)* |
| conviction of crime involving moral turpitude | § 1251(a) (4)* |
| prostitution, white slavery, etc. | §§ 1251(a) (12), * (18)* |
| § 155(d) (5) referring to § 155(b): | |
| aiding other aliens to enter illegally | § 1251(a) (13)*** |
| conviction of possessing automatic weapon | § 1251(a) (14)* |
| conviction of subversion within 5 years of entry | § 1251(a) (15)* |
| more than one conviction of subversion | § 1251(a) (16)* |

 * included in paragraph (5)
 ** included in paragraph (4)
 *** not included in any paragraph (thus no suspension possible).
(All cross-references taken from cross-reference table, 8 U.S.C.A. xxv–xxx.)

§ 1251(a) (2) (entry in violation of law) is apparently the only offense *included* in paragraph (4) which was not *excluded* from paragraph (1) relief (though the offense of illegal entry is listed in former § 155 (a) it is not an exclusion under § 155(d) (4) because it does not relate to "criminals, prostitutes, procurers, or other immoral persons, the mentally and physically deficient, anarchists, and similar classes")—but the date of the entry determines positively into which category an alien falls. Similarly §§ 1251(a) (5) (failure to register) and (17) (conviction of violation of war emergency and security laws) are the only offenses *included* in category (5) which are not *excluded* from paragraph (1) relief except insofar as § 1251(a) (17) overlaps §§ 1251(a) (4), (15), (16). Only to this extent is there a breakdown in the mutual exclusiveness of the categories.

only clear breakdown in that separation involves the very provision here under consideration: deportability due to failure to register, 8 U.S.C.A. § 1251(a) (5), which was not an offense precluding suspension of deportation under the former Act, and which thus does not explicitly preclude the applicability of paragraph (1) relief under the present Act, but which is specifically listed as included in category (5).

It is certainly clear that Congress in 1952 took a much more serious view of failure to register than had former legislatures; it is one of the few provisions in which suspension of deportation was made distinctly more difficult (at least for aliens who entered after June 26, 1950) than it had been under the former law, and no liberalizing features have been added. The principal other offense for which this is true is the offense of illegal entry, § 1251(a) (2), which, like failing to register, makes control over the alien more difficult and simplifies the offender's problem of avoiding investigation during the qualifying period. In addition aliens who aid others to enter illegally, § 1251(a) (13), are entirely precluded from seeking suspension of deportation, thus suggesting that Congress intended to penalize through the immigration laws those who violated them.

In the case of improper entry the Act is clear that only entries subsequent to June 26, 1950, shall be subject to the more severe suspension requirements, for the applicable paragraph is (4), which includes the cut-off restriction, rather than (5), which does not. For failing to register the more severe conditions clearly apply to aliens entering after June 26, 1950, for they are not covered at all by paragraph (1). It would therefore be highly anomalous for Congress, having expressed the more severe view it now takes of the offense of failure to register, to permit certain persons who violate the registration provisions of the new Act after its passage (e. g., as here, in 1953 and 1954) to receive more consideration than others who are guilty of precisely the same omission at precisely the same time, merely because the former entered the United States earlier than the latter. Such might be the result where both the entry and the offense occurred before the enactment of the new Act (or before the cut-off date two years earlier), but in the present situation, where the new Act gave notice of the more severe consequences of a failure to comply and compliance was still not forthcoming, such a construction is not reasonable. Congress should not be thought to have created two categories of aliens, distinguishable only by their date of entry, whose improper behavior carries different consequences. In view of the above, and in view also of the apparent congressional intent to make the five categories of § 1254(a) mutually exclusive, we must hold that the explicit inclusion in category (5) of deportability for failure to register implicitly excludes it from category (1).

The judgment of the district court is affirmed.