200

BANCORPORATION *et al.*, Appellees, v. BERNARD J. KORZEN, County Treasurer, *et al.*, Appellants.

*Opinion filed September 20, 1976.*

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Deputy State's Attorney, and Henry A. Hauser, Assistant State's Attorney, of counsel), for appellants.

William P. Colson, of Chicago (William J. Harte, Ltd., and Kevin M. Forde, Ltd., of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs are six corporations owning shares of capital stock of Illinois banks. For themselves, and on behalf of all

other corporations and entities similarly situated, they filed in 1973 a three-count complaint against defendants in the circuit court of Cook County concerning the imposition of personal property taxes on their shares of bank stock. In count I plaintiffs sought: (1) a preliminary injunction restraining defendant Bernard Korzen, Cook County collector and treasurer, from transferring any of their 1971 personal property tax payments, now being held in a protest fund; (2) a declaratory judgment that they are exempt from payment of personal property taxes on bank shares owned by them by virtue of section 76 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 557), and that the collection of the 1971 taxes was unauthorized; and (3) a refund of the 1971 taxes paid, plus interest. Count II seeks the same relief with respect to the 1972 personal property tax payments, and count III seeks to restrain defendants from assessing plaintiffs' bank shares for 1973. The trial court temporarily enjoined defendants from transferring any tax monies held by them which were paid by plaintiffs and members of the class as 1971 personal property taxes on bank shares, and required defendants to segregate in a protest fund the amounts paid for 1972. Thereafter, on defendants' motion, the trial court vacated the temporary injunction and entered summary judgment for defendants. Plaintiffs appealed, and the Appellate Court for the First District reversed and remanded. (29 Ill. App. 3d 526.) We allowed defendants' petition for leave to appeal.

Section 76, upon which plaintiffs rely, states:

"The stockholders of every kind of incorporated bank located within this State, whether such bank has been organized under the banking law of this State, or of the United States, shall be assessed and taxed upon the value of their shares of stock therein, in the taxing district where such bank or banking association is located and not elsewhere, whether such stockholders reside in such place or not. The value of such shares of stock for purposes of taxation shall be ascertained by deducting from the value of all the shares of the capital stock of such bank the fair

cash value of the real estate owned by such bank or banking association situated in the county in which such bank or banking association is located, as determined by the assessor. Such shares shall be listed and assessed with regard to the ownership and value thereof as they existed on the first day of April annually, *subject, however, to the restriction that taxation of such shares shall not be at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of this State, in the taxing district where such bank is located.* The shares held in this State of capital stock of National banks not located in this State shall not be required to be listed under the provisions of this Act." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 120, par. 557.)

Plaintiffs also rely upon article IX-A, a 1970 amendment to the 1870 Illinois Constitution (Ill. Const. 1870, art. IX-A (1971), sec. 1), which provided that "the taxation of personal property by valuation is prohibited as to individuals." This amendment was incorporated into the 1970 Constitution by article IX, section 5(b). (Ill. Const. 1970, art. IX, sec. 5(b).) The effect of that provision, as subsequently interpreted, was to exempt "moneyed capital," a form of personal property, from taxation in this State by valuation when that moneyed capital was owned by individuals. (See *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001; *Lake Shore Auto Parts Co. v. Korzen* (1973), 54 Ill. 2d 237 (supplemental opinion); *Hanley v. Kusper* (1975), 61 Ill. 2d 452.) Plaintiffs argue, relying on the emphasized language in section 76, that any tax on their bank shares would necessarily be at a higher rate than is assessed on "moneyed capital in the hands of individual citizens" and is therefore unauthorized.

Resolution of this issue depends on the purpose of the statutory prohibition against taxing bank shares at a greater rate than other moneyed capital in the hands of individuals. An examination of the Federal statute authorizing State taxation of shares in national banks is helpful. These banks were established as agencies of the United

States and could not be taxed by the States in any form without congressional consent. (*First National Bank v. Anderson* (1926), 269 U.S. 341, 347, 70 L. Ed. 295, 302, 46 S. Ct. 135, 138.) State taxation of national bank shares was authorized by Congress, which provided:

> "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, \*\*\* provided the following conditions are complied with:
>
> 1. \*\*\*
>
> (b) In the case of a tax on said shares *the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided,* That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." (Emphasis added.) 12 U.S.C. sec. 548 (1970).

In permitting State taxation of national bank shares, however, Congress was concerned with protecting this form of investment from an unequal tax burden. That concern appears in the emphasized rate equalization restriction, the purpose of which was explained in the leading and often quoted case of *Mercantile National Bank v. Mayor of New York* (1887), 121 U.S. 138, 155, 30 L. Ed. 895, 901, 7 S. Ct. 826:

> "A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The

> main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the State, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the Act of Congress is to be read in the light of this policy."

More recently, the Supreme Court has stated the test under this section as follows: "We believe that \*\*\* a State's tax system offends only if in practical operation it discriminates against national banks or their shareholders as a class. That is to say, we could not strike down [State legislation] unless it were manifest that an investment in national bank shares was placed at a disadvantage," in comparison with investments in competing moneyed capital. *Michigan National Bank v. Michigan* (1961), 365 U.S. 467, 476, 5 L. Ed. 2d 710, 717, 81 S. Ct. 659, 664.

It is evident from a comparison of the State and Federal statutes that our legislature carefully adhered to the congressionally imposed limitations, and that the purpose of the Illinois statute parallels the purpose of the Federal statute. Illinois goes a step further, however, and prohibits discriminatory taxation of State banks as well, when compared with investments in competing moneyed capital. The purpose of the Federal and State statutes is not, as defendants urge, designed merely to insure equality of taxation between shares of State and national banks, a situation that presently exists in Illinois, but also to insure equal taxation of like investments in competing moneyed capital. As the Supreme Court said in *Merchants' National Bank v. City of Richmond* (1921), 256 U.S. 635, 639, 65 L. Ed. 1135, 1138, 41 S. Ct. 619, 620:

> "By repeated decisions of this court, dealing with the restriction here imposed, it has become

established that while the words 'moneyed capital in the hands of individual citizens' do not include shares of stock in corporations that do not enter into competition with the national banks, they do include something besides shares in banking corporations and others that enter into direct competition with those banks. They include not only moneys invested in private banking, properly so called, but investments of individuals in securities that represent money at interest and other evidences of indebtedness such as normally enter into the business of banking."

We recognize that the Federal statute was amended in 1969, effective January 1, 1973, to require only that State and national banks be treated alike for the purpose of State taxation (12 U.S.C. sec. 548 (Supp. 1971)), but this amendment in no way affects our consideration of the present case since the Illinois statute retains the original, more restrictive language.

Plaintiffs' argument that the taxes at issue here were imposed in violation of the statutory restriction is superficially appealing: bank shares held by corporations may not be taxed at a greater rate than other moneyed capital held by individuals, and since individuals may no longer be taxed on any form of personal property, the State may not under section 76 tax bank shares in corporate hands. But this argument wholly misapprehends the purpose of the statutes. The Federal statute, as earlier indicated, is not designed to prevent States from taxing groups of taxpayers differently, but rather to prevent States from taxing one or more classes of competing moneyed capital at a lower rate than the tax on national bank shares, so that investors are not dissuaded from purchasing such shares. Simply put, States may not enact a taxing system that discriminates against national bank shares. Likewise, the Illinois statute demands that the State not discriminate against State or national bank shares as an investment. The comparison in

every instance is between types of moneyed capital, not types of taxpayers.

The confusion, of course, arises from the phrase "moneyed capital *in the hands of individual citizens*," which leads to the assumption that the statutes were intended to promote uniformity of taxation among both individual and corporate taxpayers. That this was not the purpose of the statutes is evident from a careful reading of *Mercantile National Bank v. Mayor of New York* (1887), 121 U.S. 138, 154, 30 L. Ed. 895, 901, 7 S. Ct. 826:

> "The key to the proper interpretation of the Act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the Treasury of the United States. *The capital of each of the banks in this system was to be furnished entirely by private individuals;* but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not subjects of taxation; and neither the banks themselves, nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the States in which they were located without the consent of Congress, being exempted from the power of the States in this respect, because these banks were means and agencies established by Congress in execution of the powers of the Government of the United States. It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the States the authority to tax them within the limits of a rule prescribed by the law. In fixing those limits it became necessary to

prohibit the States from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote."

Thus, since only individuals were to be investors in national bank shares, the tax equalization limitation needed apply only to other forms of moneyed capital in which individuals might invest. There was no reason to refer to moneyed capital in corporate hands. Since the statute did not anticipate any corporate investment in national bank shares, it can hardly be argued that it was designed to equalize the tax rates applicable to corporate and individual owners of moneyed capital investments. It is true that the Supreme Court later construed the Federal statute to permit corporate ownership of national bank shares (*National Bank of Redemption v. City of Boston* (1888), 125 U.S. 60, 31 L. Ed. 689, 8 S. Ct. 772), but that decision in no way affects the intended purpose that national bank shares not be placed at a tax disadvantage in the eyes of potential investors.

In our judgment, use in the Illinois statute of the restrictive language of the Federal statute requires that the same meaning be given it: neither national nor State bank shares may be placed at a tax disadvantage. And there is no tax disadvantage in the proscribed sense under present Illinois law. Individual investors are free from personal property tax upon all bank shares and other moneyed capital; corporate investors are taxed upon both. The individual investor obviously enjoys a tax advantage, but that advantage results from his status as an individual. It is not the type of discrimination prohibited by section 76, for neither category of investor is thereby dissuaded from investing in the shares of banks as opposed to other moneyed capital.

It is wholly irrelevant, for the purposes of section 76, that corporations are taxed and individuals are not taxed

on similar investments. The decision of these plaintiffs to invest in bank shares can in no way rationally depend on a comparison between plaintiffs' tax rate and another's tax rate. The argument that they are thereby unfairly discriminated against merely raises in another form the nearly identical contention disposed of in *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.

We hold that the personal property tax on corporate owners of bank stock is not proscribed by section 76 of the Revenue Act of 1939. The judgment of the First District Appellate Court is accordingly reversed and the cause remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Reversed and remanded.*